'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC. d/b/a Bang Energy; JHO INTELLECTUAL PROPERTY HOLDINGS, | Case No. 2:20-cv-06745-RSWL-JCx |
| Plaintiffs, | **ORDER re: Plaintiffs' Motion for Preliminary Injunction** [76] |
| v. | |
| PHD MARKETING, INC.; DOES 1 to 10, | |
| Defendants. | |

Currently before the Court is Plaintiffs' Motion for Preliminary Injunction [76]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** the Motion.

1

## I.   BACKGROUND

2

## A.   Factual Background

3

4        Plaintiff Vital Pharmaceuticals, Inc. d/b/a Bang

5   Energy ("Vital") is a manufacturer of nutritional

6   supplements and energy drinks, including the BANG energy

7

8   drink.  Compl. ¶ 11, ECF No. 1.  Plaintiff JHO

9   Intellectual Property Holdings, LLC ("JHO") owns the

10  BANG trademarks, and Vital is the exclusive licensee of

11

12  all intellectual property rights relating to those

13  trademarks.  Id. ¶¶ 15-16.  Specifically, JHO holds

14  trademark registration number 3,545,129 (the "BANG

15  Mark"), which was registered in 2008.  Id. ¶ 17.  JHO

16

17  also holds registration numbers 4,985,030 and 4,990,091

18  (together, the "BANG Logo").  Id. ¶ 19.  Vital uses both

19  the BANG Mark and the BANG Logo in connection with its

20

21  BANG energy drinks.  Those marks are pictured below.

22                        BANG Mark:

23

24

25



26

27

28

Compl. ¶ 17.

BANG Logo:

 

Compl. ¶ 20.

Vital sells its BANG energy drinks to a wide range of consumers across the United States.  Decl. of Eugene Bukovi in Supp. of Pls.' Mot. ("Decl. of Bukovi") ¶ 6, ECF No. 78.  Each unit sells for less than $3.  Id. ¶ 8. BANG energy drinks are the third-largest selling energy drink in the United States and have generated over $1 billion in gross revenue since 2017.  Id. ¶¶ 10-11.

Defendant PhD Marketing, Inc. ("Defendant") sells, manufactures, and imports electronic cigarette ("e-cigarette") devices under the name "Bang."  Id. ¶ 26. Plaintiffs allege that Defendant's e-cigarettes use a mark and logo that are highly similar to the BANG Mark and BANG Logo.  Id. ¶ 27.  Plaintiffs allege that Defendant uses the following marks for its e-cigarettes:

 

Plaintiffs have not authorized Defendant to use the BANG Mark or BANG Logo in any form.  <u>Id.</u>  ¶¶ 30-31.

**B.   <u>Procedural Background</u>**

Plaintiffs filed their Complaint [1] on May 19, 2020, in the Southern District of Florida.  Four days prior, on May 15, 2020, Defendant had initiated a separate action (the "First Action") for declaratory judgment in this district.  See <u>PhD Mktg., Inc. v. Vital Pharm., Inc., et al.</u>, No. 2:20-cv-04417-RSWL-JC; Notice of Related Case, ECF No. 51.  On June 1, Plaintiffs filed a Motion to Dismiss the First Action.  <u>See generally</u> Mot. to Dismiss, <u>PhD Mktg., Inc. v. Vital Pharm., Inc., et al.</u>, No. 2:20-cv-04417-RSWL-JC, ECF No. 13.   During the pendency of that motion, this Action was transferred from the Southern District of Florida to this district [44] and ultimately to this Court [67].

On October 1, the Court granted Plaintiffs' Motion

to Dismiss the First Action with leave to amend and denied the Joint Motion to Consolidate as Moot.  See generally id., ECF No. 29.  On October 15, Defendant filed its First Amended Complaint in the First Action. Id., ECF No. 35.

On September 28, Plaintiffs filed the pending Motion for Preliminary Injunction [76] in this Action. Defendant opposed [83] the Motion on October 6, and Plaintiffs replied [86] on October 13.

On October 20, Defendant filed an *ex parte* Application [91] to submit additional evidence and provide evidentiary objections, which the Court denied [95] on October 26.

## II.   DISCUSSION

### A.   Legal Standard

A court may grant a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a).  A preliminary injunction, however, "is an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A [party] seeking a preliminary injunction must establish that he is likely

to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Am. Trucking Ass'ns v. City of Los Angeles</u>, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter, 555 U.S. at 20 (2008)).

The Ninth Circuit employs a sliding scale when considering a party's showing as to the likelihood of success on the merits and the likelihood of irreparable harm. <u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." <u>Id.</u>

**B. <u>Discussion</u>**

1. <u>Defendant's Evidentiary Objections</u>

Defendant has filed several evidentiary objections to the declaration of Eugene Bukovi [78], which accompanies Plaintiffs' Motion. <u>See generally</u> Def.'s Evidentiary Objections, ECF No. 83-5. However, "courts may consider otherwise inadmissible evidence in

preliminary injunction proceedings." <u>Garcia v. Green Fleet Sys., LLC</u>, No. 2:14-cv-06220-PSG-JEM, 2014 WL 5343814, at *5 (C.D. Cal. Oct. 10, 2014). "[E]videntiary objections to evidence submitted in connection with a motion for a preliminary injunction 'properly go to weight, rather than admissibility.'" <u>Hope Med. Enter., Inc. v. Fagron Compounding Servs., LLC</u>, No. 2:19-cv-07748-CAS(PLAx), 2020 WL 3803029, at *5 (C.D. Cal. July 7, 2020) (quoting <u>Garcia</u>, 2014 WL 5343814, at *5). Accordingly, those objections are **OVERRULED**.

     2.  <u>Likelihood of Success on the Merits</u>

     To prevail on a trademark infringement claim under the Lanham Act, a party must prove (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. <u>Network Automation, Inc. v. Advanced Sys. Concepts</u>, 638 F.3d 1137, 1144 (9th Cir. 2011)(citation omitted).

     a.  *Protectable Ownership Interest*

     Federal registration of a trademark is "prima facie evidence of the validity of the registered mark . . . ,

of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark . . . ."  15 U.S.C. § 1057(b).  The defendant then carries the burden of challenging the registration.  <u>Jevo Inc. v. Barre Physique LLC</u>, No. CV-08-06315-R, 2010 WL 11597823, at *8 (C.D. Cal. Feb. 22, 2010).

The parties do not dispute that JHO owns the asserted trademarks, but Defendant contends that, under the U.S. Patent and Trademark Office's Trademark Manual of Examining Procedure ("TMEP") § 1201.02(b), JHO's registrations are invalid because JHO, the owner of the marks, is not the entity that filed the registrations. Def.'s Opp'n to Mot. for Prelim. Inj. ("Opp'n") 11:17-12:10, ECF No. 83.

However, TMEP § 1201.02(b) allows an application by "the party who is the owner <u>(or is entitled to use)</u> the mark."  TMEP § 1201.02(b) (emphasis added).  Moreover, 15 U.S.C. § 1055 provides that, "[w]here a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for

registration."  Plaintiffs provide evidence that Vital

was the sole member of Bang Energy, LLC at the time Bang

Energy, LLC filed the registrations and that, as an

affiliate, Vital was permitted to use the marks.  Decl.

of Michael W. Carwin in Supp. of Pls.' Reply ("Decl. of

Carwin") ¶ 2, ECF No. 88.  Plaintiffs have thus

established a valid, protectable interest in the

asserted marks.

      b.  *Consumer Confusion*

    The Ninth Circuit considers eight factors, termed

the <u>Sleekcraft</u> factors, to determine likelihood of

consumer confusion: (1) strength of the mark; (2)

proximity of the goods; (3) similarity of the marks; (4)

evidence of actual confusion; (5) marketing channels

used; (6) type of goods and the degree of care likely to

be exercised by the purchaser; (7) defendant's intent in

selecting the mark; and (8) the likelihood of expansion

of the product lines.  <u>AMF Inc. v. Sleekcraft Boats</u>, 599

F.2d 341, 348-49 (9th Cir. 1979), <u>abrogated in part on</u>

<u>other grounds by</u> <u>Mattel, Inc. v. Walking Mountain</u>

<u>Prods.</u>, 353 F.3d 792, 810 (9th Cir. 2003).  The Court

considers each factor in turn.

i.  *Strength of the Mark*

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." Network Automation, 638 F.3d at 1149 (quoting Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1058 (9th Cir. 1999)).  Courts evaluate the strength of a mark conceptually and commercially.  Id.  Conceptual strength refers to the classification of a mark based on its "inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful."  Id. (citing Brookfield, 174 F.3d at 1058).  Commercial strength, on the other hand, refers to the mark's "actual marketplace recognition."  Id. (citing Brookfield, 174 F.3d at 1058).  "[A] suggestive or descriptive mark, which is conceptually weak, can have its overall strength as a mark bolstered by its commercial success."  Monster Energy Co. v. BeastUp LLC, 395 F. Supp. 3d 1334, 1352 (E.D. Cal. 2019) (citing M2 Software, Inc. v. Madacy

1  <u>Ent.</u>, 421 F.3d 1073, 1081 (9th Cir. 2005)).

2      Plaintiffs argue that the BANG Mark and BANG Logo

3  are arbitrary—and therefore conceptually strong—because

4

5  "they bear no relationship to the actual product."  Mem.

6  of P. & A. in Supp. of Mot. for Prelim. Inj. ("Mot.")

7

8  17:17, ECF No. 77.  Defendant counters that the marks

9  are "at best suggestive, and more realistically . . .

10  descriptive."  Opp'n 13:7-8.

11

12      The determination of a mark's conceptual strength

13  turns on "the obviousness of its connection to the good

14  . . . to which it refers."  <u>Id.</u> (citing <u>Fortune Dynamic</u>,

15

16  618 F.3d at 1032-33).  The distinction between

17  suggestive marks and descriptive marks is thus:

18      The "primary criterion for distinguishing between a
19      suggestive and a descriptive mark is the
         imaginativeness involved in the suggestion, that
20      is, how immediate and direct is the thought process
         from the mark to the particular product."  A mark
21      is suggestive "if 'imagination' or a 'mental
22      leap' is required in order to reach a conclusion
         as to the nature of the product being referenced.
23      By contrast, a mark is descriptive if it defines a
         particular characteristic of the product in a way
24      that does not require any exercise of the
25      imagination."
26

27  <u>Home Comfort Heating & Air Conditioning, Inc. v. Ken</u>

28

Starr, Inc., No. 818CV00469JLSDFM, 2018 WL 3816745, at

*3 (C.D. Cal. July 24, 2018) (citations omitted)

(quoting Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1197-

98 (9th Cir. 2009)).

The word "bang" for an energy drink is at least

suggestive, as it requires some degree of imagination to

make the association between the mark and the product.

"Bang" does not directly describe the product but

instead seems to suggest the product's effect, if it

relates to the product at all.  Although Plaintiffs may

later prove the mark to be stronger, the Court concludes

that the BANG Mark is at least suggestive.  Perhaps even

stronger is the BANG Logo, which in no way suggests the

nature of the product or its effects.

Defendant argues, however, that the crowded field

of similar products using similar marks weakens

Plaintiffs' marks.  Opp'n 13:13-14:3.  "[W]hen 'the

marketplace is replete with products using a

particularly trademarked' symbol, it 'indicates not only

the difficulty in avoiding its use but also, and

directly, the likelihood that consumers will not be

confused by its use.'" JL Beverage Co., LLC v. Jim Beam Brands Co., 828 F.3d 1098, 1108 (9th Cir. 2016) (emphasis in original) (quoting Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002)).

To support its contention that the field is crowded, Defendant proffers numerous registrations of marks containing the term "Bang" or the letter "b" for "beverages, tobacco products and food items." Decl. of Randal Robinson in Supp. of Def.'s Opp'n ("Decl. of Robinson") ¶¶ 5-6, ECF No. 83-3.

Plaintiffs correctly point out that the mere existence of third-party registrations does not establish a crowded field "without evidence that the marks were actually used in commerce and viewed by consumers." Boldface Licensing + Branding v. By Lee Tillett, 940 F. Supp. 2d 1178, 1191 (C.D. Cal. 2013) (citing cases). Thus, the evidence to which Defendant cites regarding the existence of numerous registrations is immaterial without an indication that those registrations have been viewed by consumers.

In addition, Plaintiffs seek to define the relevant

field more narrowly than "beverages" and "food items,"
Pls.' Reply in Supp. of Mot. for Prelim. Inj. ("Reply")
9:16-17, ECF No. 78, because Defendant provides no
evidence of marks similar to those of Plaintiffs in the
field of energy drinks.  Although Defendant deems energy
drinks to be in the same field as coffee beverages,
there is no evidence showing coffee beverages "would
likely [be] sold side-by-side" with the BANG energy
drink.  Hansen Beverage Co. v. Cytosport, Inc., No. CV
09-0031-VBF(AGRx), 2009 WL 5104260, at *8 (C.D. Cal.
Nov. 4, 2009).  Moreover, even assuming Defendant is
correct that sports drinks and energy drinks are within
the same field, Defendant offers only one instance of a
sports drink with a comparable mark.  Opp'n 14:11-21.
This is insufficient to determine that the BANG Mark and
BANG Logo operate in a crowded field.

Moreover, whatever weakness there is in a
suggestive mark may be overcome by a showing of
commercial strength.  See Entrepreneur Media, 279 F.3d
at 1144 (citing Am. Int'l Grp., Inc. v. Am. Int'l Bank,
926 F.2d 829, 832 (9th Cir. 1991)).  Plaintiffs argue

that the marks are commercially strong, as BANG energy drinks have generated over $1 billion in gross revenue since 2017 and "are considered the third largest selling energy drink in the United States."  Mot. 17:22-26; Reply 7:26-8:5; Decl. of Bukovi ¶¶ 10-11, ECF No. 78. This commercial success, which Defendant does not dispute, evidences a stronger mark.  Because the BANG Logo and BANG Mark are at least suggestive and are further bolstered by the commercial success of BANG energy drinks, this factor weighs in favor of confusion.

        ii.  *Proximity of the Goods*

    "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods."  <u>Network Automation</u>, 638 F.3d at 1150 (citing <u>Brookfield</u>, 174 F.3d at 1055).  The key question is whether, based on the relevant marks, consumers are likely to associate Plaintiffs' BANG energy drinks with Defendant's e-cigarettes.  <u>See Fortune Dynamic</u>, 618 F.3d at 1035 ("In addressing this factor, our focus is on whether the consuming public is likely somehow to associate [Fortune's DELICIOUS

footwear] with [Victoria's Secret's tank top].").  This
determination is made by evaluating "whether the
products are: (1) complementary; (2) sold to the same
class of purchasers; and (3) similar in use and
function."  <u>Network Automation</u>, 638 F.3d at 1150.

There is no evidence that the products at issue are
complementary or that they are similar in use and
function.  An energy drink is used for considerably
different purposes than an e-cigarette.  <u>See</u> <u>Kiva Health</u>
<u>Brands LLC v. Kiva Brands Inc.</u>, 402 F. Supp. 3d 877, 893
(N.D. Cal. 2019) (determining that health supplements
and cannabis-infused snacks, although both food items,
are not complementary because they are used for "quite
different" purposes).  Moreover, although Plaintiffs
proffer some evidence that the products may be sold in
similar channels, Plaintiffs provide no evidence that
their products and Defendant's products are sold to the
same class of purchasers.

Accordingly, this factor weighs against consumer
confusion.

///

16

iii.   *Similarity of the Marks*

This factor is critical in evaluating the likelihood of confusion.  <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1205 (9th Cir. 2000) ("[T]he similarity of the marks . . . has always been considered a critical question in the likelihood-of-confusion analysis.").  Similarity is principally tested by sight, sound, and meaning.  <u>Network Automation</u>, 638 F.3d at 1150.  A court must consider the marks "as they appear in the marketplace" and weigh "similarities . . . more heavily than differences."  <u>Fortune Dynamic</u>, 618 F.3d at 1032 (citing <u>GoTo.com</u>, 202 F.3d at 1206).

Plaintiffs provide the below comparison of the BANG Logo and BANG Mark, on the left, and Defendant's alleged infringing marks, on the right:



Mot. 2:6-16.

With respect to the BANG Mark and Defendant's "bang" mark, there is no question as to the overwhelming similarities.  The words, expressed all in lowercase, are the same.  As Plaintiffs point out, the marks have "the exact same stylized font, font bordering, and font proportions."  Mot. 17:1.

With respect to the BANG Logo and Defendant's "b" mark, the similarities are substantial.  Looking at the respective "b" marks, there are likenesses in the font and borders.  Apart from those similarities, however, there are some differences which lessen the likelihood of consumer confusion as compared to the BANG Mark.

In summary, although Plaintiffs' BANG Mark and Defendant's "bang" mark are not identical, they are exceptionally similar.  Moreover, the BANG Logo and Defendant's "b" mark maintain sufficient similarities as to engender consumer confusion.  Therefore, this factor militates in favor of confusion.

iv.  *Evidence of Actual Confusion*

"[A] showing of actual confusion among significant

18

numbers of consumers provides strong support for the likelihood of confusion." <u>Network Automation</u>, 638 F.3d 1137 at 1151 (citing <u>Playboy Enters., Inc. v. Netscape Commc'n Corp.</u>, 354 F.3d 1020, 1026 (2004)).  But actual confusion is not necessary to establish a likelihood of confusion.  <u>Id.</u>

Plaintiffs cite several instances of actual confusion.  Specifically, Plaintiffs attach several social media posts and email communications whereby consumers believe that Vital is the source of Defendant's e-cigarettes.  <u>See</u> Decl. of Bukovi, Ex. 3; Decl. of Bukovi, Ex. 12; Decl. of Bukovi, Ex. 13; Decl. of Bukovi, Ex. 15.

The instances to which Plaintiffs cite demonstrate that consumers have indeed believed Vital to be the source of Defendant's e-cigarettes.  This evidence of actual confusion "is persuasive proof that future confusion is likely."  <u>Sleekcraft</u>, 599 F.2d at 352.  However, the Court cannot determine at this stage that twelve such instances necessarily establish that the alleged infringement is "likely to confuse an

appreciable number of people as to the source of the product." Entrepreneur Media, 279 F.3d at 1151 (emphasis in original); see also Chron. Publ'g Co. v. Chron. Publ'ns, Inc., 733 F.Supp. 1371, 1377-78 (N.D. Cal. 1989) (finding the "actual confusion" factor to weigh heavily in plaintiff's favor when plaintiff provided over 100 instances of confusion).

Despite the compelling nature of the actual instances of confusion, this factor weighs only slightly in favor of confusion because of the unremarkable number of cited instances. Regardless, failure to conclusively establish actual confusion is not dispositive. Sleekcraft, 599 F.2d at 352.

v. *Marketing and Trade Channels Used*

"Convergent marketing channels increase the likelihood of confusion." Network Automation, 638 F.3d 1137 at 1151 (citing Sleekcraft, 599 F.2d at 353). The question is "whether the predominant purchasers of the parties' goods are similar or different, and whether the marketing approaches used resemble each other." Glow Indus., Inc. v. Lopez, 252 F. Supp. 2d 962, 1000 (C.D.

Cal. 2002).  Although the parties need not target the same customers, there must be "some overlap."  <u>Boldface Licensing + Branding v. By Lee Tillett, Inc.</u>, 940 F. Supp. 2d 1178, 1194 (C.D. Cal. 2013); <u>see also</u> <u>Glow Indus.</u>, 252 F. Supp. 2d at 1000 ("[S]ome degree of overlap must be present before the factor favors a finding of likelihood of confusion.").

There is no question here that the parties employ distinct marketing approaches.  Vital primarily markets the BANG energy drinks through "athletes, brand ambassadors, and social media influencers" as well as at trade shows and fitness expos.  Mot. 5:19-15, 6:6-7. There is no evidence that Defendant has a similar marketing approach.  To the extent the parties' marketing approaches overlap through use of the internet, "the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."  <u>Network Automation</u>, 638 F.3d at 1151.

The more pertinent question is whether the predominant purchasers of the respective products are

similar.   Plaintiffs and Defendant each provide evidence that their products are sold at smoke shops.   Decl. of KJ Semikian in Supp. of Opp'n ("Decl. of Semikian") ¶ 9, ECF No. 83-1; Suppl. Decl. of Eugene Bukovi in Supp. of Pls.' Mot. for Prelim. Inj. ("Suppl. Decl. of Bukovi") ¶ 9, ECF No. 87.   Even if a substantial part of Vital's sales come from sources other than smoke shops, Plaintiffs have made a sufficient showing of at least "some overlap" between the predominant purchasers.   This factor weighs slightly in favor of confusion.

vi.   *Degree of Care Likely to Be Exercised by the Purchaser*

Where consumers exercise a lesser degree of care, there is a higher likelihood of confusion.   Network Automation, 638 F.3d 1137 at 1152.   Courts evaluate the degree of care based on "the typical buyer exercising ordinary caution."   Id. at 1152.

"[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely."   Brookfield, 174 F.3d at 1060. The BANG energy drink sells at less than $3 per unit,

while Defendant's e-cigarette sells at less than $10 per unit.  Decl. of Bukovi ¶¶ 8, 40.

Defendant focuses on the nature of the consumer, rather than the products' price points, in arguing that health-conscious consumers, to whom Vital sells, exercise greater care in selecting products regardless of price.  Opp'n 18:21-19:1.  Although courts have recognized a heightened degree of care where the product appeals to a group that is particularly health-conscious, that elevated standard of care is not applicable where only some of the customers may be more sophisticated.  See Suja, Life, LLC v. Pines Int'l, Inc., No. 16CV985-GPC(WVG), 2016 WL 6157950, at *12 (S.D. Cal. Oct. 24, 2016) (noting a higher degree of care where "[b]oth parties agree that their consumers are health-conscious and environmentally aware shoppers"); see also Worthington Foods, Inc. v. Kellogg Co., 732 F.Supp. 1417, 1448 (S.D. Ohio 1990) (finding a higher degree of care where plaintiff conceded "that those who purchase its products are well-educated, health-conscious consumers").  Even though Vital

promotes a health-conscious brand, its consumers are not

necessarily health-conscious in every instance, or even

most instances.  <u>See</u> Decl. of Bukovi ¶ 6 ("BANG energy

drinks . . . are sold to a wide range of customers . . .

."); Compl. ¶ 14 ("[Vital] sells BANG energy drinks to

various types of consumers . . . .").

    Because of the low price points of both the BANG

energy drinks and Defendant's e-cigarettes, consumers

are more likely to exercise a lesser degree of care.

This factor weighs in favor of confusion.

               vii.  *Defendant's Intent*

    "When an alleged infringer knowingly adopts a mark

similar to another's, courts will presume an intent to

deceive the public."  <u>Off. Airline Guides, Inc. v. Goss</u>,

6 F.3d 1385, 1394 (9th Cir. 1993).  Courts may infer

knowledge based on the plaintiff's reputation or the

similarity of the marks.  <u>See, e.g.</u>, <u>Fiji Water Co., LLC</u>

<u>v. Fiji Mineral Water USA, LLC</u>, 741 F. Supp. 2d 1165,

1181 (C.D. Cal. 2010) ("In light of how well-known the

FIJI packaging was by 2007 and the wide variety of

alternative designs used in the bottled water industry,

it seems unlikely that such similarity could result from
a coincidence."); <u>K-Swiss, Inc. v. USA AISIQI Shoes
Inc.</u>, 291 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003)
(inferring an intent to deceive the public based on "K-
Swiss' strong reputation and the similarity of the marks
used").

There is no direct evidence that Defendant knew of
the BANG Logo and BANG Mark.  But Plaintiffs contend
that Defendant must have known about the BANG Mark and
BANG Logo because Defendant's marks are virtually
identical.  Mot. 20:8-10.  As discussed above, although
the marks may have a close resemblance, they are not
identical.  Moreover, Defendant is not in the business
of selling beverages, so the Court declines to impute
knowledge to Defendant based on the prominence of the
BANG energy drinks.

       viii.  *Likelihood of Expansion of Product
Lines*

This factor weighs in favor of the plaintiff where
there is a "'strong possibility' that either party may
expand his business to compete with the other."  <u>Network</u>

25

*Automation*, 638 F.3d 1137 at 1153 (quoting *Sleekcraft*, 599 F.2d at 354).  Plaintiff fails to address this factor.  It therefore weighs against confusion.

>       ix.  *Conclusion as to Likelihood of Success*

As shown above, the *Sleekcraft* factors do not uniformly command a result.  However, "the relative importance of each individual factor [is] case-specific."  *Fortune Dynamic*, 618 F.3d at 1030 (quoting *Brookfield Commc'ns*, 174 F.3d at 1054).  Here, Plaintiffs hold the rights to the BANG Mark and the BANG Logo.  The remarkable similarities between Plaintiffs' and Defendant's marks—as well as the strength of Plaintiffs' marks, the convergence of marketing channels, the instances of actual confusion, and the low degree of consumer care—insist upon consumer confusion.  As consumer confusion is "the linchpin of trademark infringement," *Network Automation*, 638 F.3d at 1154, Plaintiffs have made a sufficient showing that they are likely to succeed on their claim for trademark infringement.

///

3.   Irreparable Harm

Plaintiffs must demonstrate that they are likely to suffer irreparable harm if the Court does not grant the preliminary injunction.  Winter, 555 U.S. at 20 (emphasis added).  Mere customer confusion, on its own, cannot constitute irreparable harm.  See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013) (distinguishing evidence that "simply underscores customer confusion, not irreparable harm").  However, "[e]vidence of loss of control over business reputation and damage to goodwill" may be sufficient.  Id.

Here, Plaintiffs contend that irreparable harm comes in the form of reputational damage and loss of goodwill.  Mot. 21:7-9.  They point to several customer communications.  Reply 16:22-17:7.  For instance, one customer remarked, "I was excited to try all of your wonderful flavors but because of this incident I don't think I will buy another one because I feel like I will get the same result.  Sincerely, a disappointed customer."  Decl. of Bukovi, Ex. 13.  Another customer

wrote, "I bought a bang disposable [e-cigarette] today from a local liquor store in my area . . . .   I would like a refund . . . .   This is my first time buying this product and it didn't work, very disappointed."   Decl. of Bukovi, Ex. 15.   But the dissatisfaction of these customers with the e-cigarettes—and ultimately whether these customers will elect to purchase another e-cigarette—is of no moment to Plaintiffs.   Because Plaintiffs' reputation is premised on its sales of energy drinks, not e-cigarettes, the Court cannot infer that customer dissatisfaction with e-cigarettes establishes a likelihood of irreparable harm if an injunction does not issue.

The cases to which Plaintiffs cite on this point are inapposite.   See Reply 15:13-16:16.   In those cases cited by Plaintiffs, there was affirmative evidence of irreparable harm—namely, that customers diverted from the plaintiff's business because of the infringement. See, e.g., OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc., 602 Fed. Appx. 669, 672 (9th Cir. 2015) (affirming the conclusion of irreparable harm where the defendant

"was selling its allegedly infringing tire to [plaintiff's] major customer"); Grupo Salinas Inc. v. JR Salinas Wheels & Tires Inc., No. SACV 16-1923 JVS (KESx), 2016 WL 9277320, at *7 (C.D. Cal. Dec. 22, 2016) (finding irreparable harm where evidence "suggest[ed] that customers may become frustrated with prices and ultimately choose JR Salinas over Grupo Salinas"); Kreation Juicery, Inc. v. Shekarchi, No. CV 14-658 DMG (ASx), 2014 WL 7564679, at *12 (C.D. Cal. Sept. 17, 2014) (holding that the plaintiff established irreparable harm where defendant was diverting customers from plaintiff's business); Nestle USA, Inc. v. Gunther Grant, Inc., No. CV-13-6754 MMM (ASx), 2014 WL 12558008, at *18 (C.D. Cal. May 13, 2014) (issuing a permanent injunction where the defendants' infringement "diverts potential Nestle customers to defendants' business"). Here, Plaintiffs have only provided instances of confusion—not actual, irreparable harm. Although there may be examples of customer dissatisfaction with the e-cigarettes, there is no evidence currently before the Court concerning how the confusion has impacted or will

impact Plaintiffs' reputation or commercial success.

Furthermore, Plaintiffs' assertions that Vital "will continue to suffer tremendous loss of goodwill to its BANG brand" and "will loss [sic] control of the reputation of the BANG brand", Decl. of Bukovi ¶¶ 48-49, are conclusory and thus insufficient to demonstrate a likelihood of irreparable harm.  See Kiva Health, 402 F. Supp. 3d 877, 896 (N.D. Cal. 2019).

Finally, although a delay in filing for injunctive relief is not determinative, it "implies a lack of urgency and irreparable harm."  Cuviello v. City of Vallejo, 944 F.3d 816, 833 (9th Cir. 2019) (citations omitted); see also Dahl v. Swift Distrib., Inc., No. CV 10-00551 SJO (RZx), 2010 WL 1458957, at *3 (C.D. Cal. Apr. 1, 2010) (noting that an "unexplained delay . . . undercuts a claim that an injunction is necessary to prevent immediate and irreparable injury").  Plaintiffs' two-month delay in filing this Motion weighs against irreparable harm.  See AK Metals, LLC v. Norman Indus. Materials, Inc., No. 12cv2595-IEG (WVG), 2013 WL 417323, at *10 (S.D. Cal. Jan. 31, 2013) ("Plaintiff's [two-

month] delay in filing the motion . . . weighs against the immediacy of the harm.").

In summary, Plaintiffs have established a strong likelihood of success on the merits.  However, given their failure to establish a likelihood of irreparable harm, Plaintiffs have failed to meet their burden to prevail on this Motion.

Accordingly, the Court need not address the balance of hardships factor, the public interest factor, or the need for a bond.

### III.  CONCLUSION

Based on the foregoing, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

DATED: November 6, 2020        /s/ Ronald S.W. Lew_____ __
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge

31